UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-CV-10057 RWZ

Leon Boole Jr., )
    Plaintiff )
)
vs. )
)
Auto Auction of New England, Inc., )
Kenneth Lord, )
Danny Mosher d/b/a )
DM Automotive, )
    Defendants )
)

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS AUTO AUCTION OF NEW ENGLAND, INC. AND KENNETH LORD'S MOTION TO DISMISS**

Plaintiff hereby files this Memorandum In Support of his Opposition to Defendants' Motion to Dismiss for lack of personal jurisdiction.

**A.  STANDARD OF REVIEW**

Defendants AANE and Kenneth Lord move pursuant to Federal Rule of Civil Procedure 12(b)(2) for dismissal of this action for lack of personal jurisdiction. The Plaintiff, Leon Boole Jr., bears the burden of establishing that AANE and Kenneth Lord's conduct satisfies the requirements of the Massachusetts long-arm statute and that exercise of jurisdiction pursuant to the statute satisfies the strictures of the Constitution. *Foster-Miller, Inc. v. Babcock & Wilson Canada*, 46 F. 3d 138, 145 (1st Cir. 1995), *Droukas v. Divers Training Academy, Inc.*, 375 Mass. 149, 150 (1978). Although the Plaintiff has the burden of showing that jurisdiction exists, the district court must determine what evidentiary showing the plaintiff must make for the case to survive the defendant's motion to dismiss. *Hasbro, Inc. v. Clue Computing, Inc.* 994 F. Supp. 34 (D. Mass.

1

1997). The First Circuit, in <u>Boit v. Gar-Tec Products, Inc.</u>, 967 F.2d 671 (1st Cir. 1992), formulated three standards that might be employed when evaluating the motion.[1] The most conventional of these methods, the prima facie standard, permits the district court "to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." <u>Boit</u>, 967 F. 2d at 675. , <u>Hasbro, Inc.</u>, 994 F. Supp. at 36. In making the proffer, the plaintiff cannot rest upon the pleadings, but rather is obliged "to adduce evidence of specific facts." <u>Boit</u>, 967 F. 2d at 675, <u>Hasbro, Inc.</u>, 994 F. Supp. at 36. The court then accepts these facts as true for the purpose of determining the adequacy of the...showing." <u>Hasbro, Inc.</u>, 994 F. Supp. at 36, <u>Foster-Miller</u>, 46 F. 3d at 145. This approach is appropriate when the facts, which would support jurisdiction, are not in dispute. <u>Boit</u>, 967 F. 2d at 676, <u>Hasbro, Inc.</u>, 994 F. Supp. at 36.

The most common approach to allow a court to determine a Rule 12 (b)(2) motion is by review of affidavits and other evidence without conducting an evidentiary hearing. Use of the prima facie standard to determine personal jurisdiction preliminarily reserves the jurisdictional issue, unless waived by the defendants, for final determination at trial pursuant to the preponderance of the evidence standard. <u>Marine Midland Bank, N.A v. Miller</u>, 664 F. 2d 899, 904 (2d Cir. 1981), <u>Cepeda V. Kass</u>, 62 Mass. App. Ct. 732 (2004) In evaluating a prima facie showing the court acts as data collector, not as fact finder. In conducting the requisite analysis under the prima facie standard, we take specific facts affirmatively alleged by the plaintiff as true

---

[1] The Court of Appeals for the First Circuit has outline three different acceptable methods of determining a 12(b)(2) motion, each using a different evidentiary standard to determine the adequacy of the "showing" required by plaintiff. In addition to prima facie and the preponderance of the evidence standards, the First Circuit has identified an intermediary standard which allows for "differential fact-finding, limited to probable outcomes as opposed to definitive findings of fact.....this assures that the circumstances justify imposing on a foreign defendant the burdens of trial, but leaves for trial a binding resolution of the factual disputes common to both the jurisdictional issue and the merits of the claim." <u>Boit v. Gar-Tec Products, Inc.</u>, 967 F.2d 671 (1st Cir. 1992), <u>Foster-Miller, Inc. v. Babcock& Wilson Canada</u>, 46 F. 3d 138, 145 (1st Cir. 1995).

(whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." *Cepeda V. Kass*, citing *Massachusetts School of Law at Andover, Inc. v. American Bar Assn*. 142 F. 3d 26, 34 (1st Cir. 1998). "The plaintiff must eventually establish jurisdiction by a preponderance of the evidence at an evidentiary hearing or at trial." But until such a hearing is held, a prima facie showing suffices notwithstanding any controverting presentation by the moving party, to defeat the motion. *Marine Midland Bank, N.A v. Miller*, 664 F. 2d at 904. However, "after the parties have proffered their evidence, the court may weigh evidence and make findings about whether plaintiff has made a showing as to each jurisdictional fact. In doing so, it may apply a preponderance of the evidence standard." *Boit v. Gar-Tec Products, Inc.*, 967 F.2d at 676. *Cepeda V. Kass*, 62 Mass. App. Ct. 732 (2004). In other words, the court has discretion to apply the prima facie standard of review initially and reserve final determination at a trial/evidentiary hearing or it can make a final determination based on proffered evidence and apply the preponderance of the evidence standard.

    The plaintiffs hereby argue that the conventional, prima facie standard, should be applied and that final determination should be reserved for a pre-trail hearing or trial. The plaintiff suggests that the evidence proffered in response to the defendants' motion to dismiss, although probative and likely sufficient on the issue of personal jurisdiction, could be bolstered considerably through discovery and/or an evidentiary hearing allowing the court to make a more informed determination while applying the more stringent preponderance of the evidence standard.

B.  **DEFENDANTS AUTO AUCTION OF NEW ENGLAND, INC. (AANE) AND KENNETH LORD**

AANE, as the name implies, is a regional automobile auction located approximately ten miles north of the Massachusetts border in Londonderry, New Hampshire. Defendant Kenneth Lord was, at the time this cause of action arose, an agent and employee of AANE. AANE currently auctions approximately 1200 to 1500 vehicles per week with hundreds of regional and local auto dealers in attendance using a six-lane indoor facility. **(Exhibit B)** Automobiles are accepted from any registered dealer from any state on a consignment basis for a fee and then auctioned to a registered dealer or dealer's buyer/agent from any state for an auction fee.[2] AANE also provides transportation and reconditioning services to any dealer interested in auctioning a vehicle at the AANE facility. **(Exhibit B)** AANE, which is a member of the National Auto Auction Association, also lists as "clients" numerous bank, credit union and car rental companies that it transacts business with including, but not limited to, Massachusetts companies such as Merrimack Valley F.C.U. and Digital Federal Credit Union. **(Exhibit C)**

Any licensed auto dealer (and its agent/buyer) seeking to do business with AANE must first register with it by obtaining registration forms either by mail or by accessing AANE's interactive web site where forms can be downloaded or printed.[3] The forms required by AANE include a Dealer Application, Dealer Authorization Letter, Dealer's Authorization (to release bank information), Power of Attorney and Marketing Consent Form. **(Exhibit D)** In addition to submitting these completed forms to AANE the dealer must also pay a $50.00 processing fee.

---

[2] All dealers doing business with AANE must show proof of licensure in the dealer's state prior to registering with AANE. ( **Exhibit D** ) References to "registered" dealers for purposes of this memorandum shall mean registration with AANE unless otherwise noted.

[3] www.aane.com

4

AANE then processes the application and contacts the dealer's bank, presumably by mail in order to present an original Dealer's Authorization to release bank information. After the bank returns the Dealer's Authorization to AANE, a decision is made to accept or reject the dealer and its agent/buyer. In the event the dealer is accepted and registered by AANE, it issues the dealer a registration card ( and an agent/buyer registration card if applicable) which is scanned at time of entry to the AANE auction facility.

    a.    **Organization**

AANE is a New Hampshire corporation located in Londonderry, New Hampshire. Created in 1994 by William P. Deluca III, it currently has three officers and ten directors all with business addresses located at 339 North Main St., Andover, Massachusetts and 45 Haverhill St., Andover, Massachusetts. These are also the addresses of Deluca Saturn, Inc. auto dealership and AutoUse I, Inc. (hereafter referred to as "AutoUse"), both affiliates of AANE, sharing common officers and directors ( **Exhibit E** )

    b.    **AutoUse**

Qualified dealers who purchase vehicles at AANE are offered "Floor Plan Financing" with AutoUse, AANE's affiliated finance company located at <u>45 Haverhill Street, Andover, Massachusetts</u>.[4] AANE provides for an agent of AutoUse to be present at every auction who is authorized to arrange financing for vehicles purchased at the auction on behalf of AutoUse. All future debt payments are then made directly to AutoUse as the lienholder, at 45 Haverhill Street, Andover, Massachusetts. (**Exhibit A, item 4**)

---

[4] AutoUse I, Inc. is a Delaware corporation with its principal office located at 45 Haverhill St., Andover, Massachusetts. It currently shares officers and directors with AANE.

In addition to providing financing to AANE customers, AutoUse advertises its services directly to dealers registered with AANE including Massachusetts registered dealers pursuant the "Marketing Consent Form" signed by each registered dealer allowing AANE and its affiliates to solicit them directly. **(Exhibits D, page 8 )** AutoUse solicits business for itself and AANE since its solicitations commonly offer special financing only on vehicles purchased at AANE. **(Exhibit H)**

    c.    <u>Marketing and Business Solicitation</u>

Once a dealer is registered with AANE it receives a monthly "Market Reports" brochure prepared and mailed by AANE which contains the prior month's sales information and multiple solicitations regarding upcoming special sales events as well as a monthly calendar containing auction dates, times and auction special event information. **(Exhibits A, F)** Dealers also receive weekly "run lists" either by mail or facsimile, which contain information on cars to be sold at an upcoming weekly auction. **(Exhibit G).** Dealers are encouraged to review these lists and to identify certain cars they may be interested in purchasing at a particular auction. In addition to these AANE solicitations, AutoUse also solicits dealers regularly regarding special finance arrangements available to dealers <u>who purchase vehicles at an AANE auction</u>. **(Exhibits A, H).** Lastly, AANE has advertised in a monthly trade magazine known as Automotive News accessible by Massachusetts dealers. **(Exhibit A)**

In addition to direct dealer solicitations by both AANE and AutoUse, AANE encourages dealers, through its monthly brochure, to visit its web site where they can access AANE auction information, print or download registration forms, access a "dealers only" section and view an assortment of AANE promotional materials. The AANE web site also contains a specific advertisement for its Massachusetts based affiliate, AutoUse, by announcing that "100% Floor

6

Plan Financing available through AUTOUSE to Qualified Dealers" with AutoUse telephone numbers and web site information provided. **( Exhibit B, page 5 )**

C.  **PLAINTIFF LEON BOOLE JR.**

Plaintiff Leon Boole Jr. is a resident of Dedham, Massachusetts. He has been employed by numerous automobile dealerships in Massachusetts over the last seventeen years. In the year 2001, plaintiff was hired as an "independent buyer" by Union Auto Sales, Inc. of Fitchburg, Massachusetts with the responsibility of locating quality pre-owned vehicles for later resale at Union Auto Sales, Inc.. Due to his experience in the automobile sales business in Massachustts, plaintiff was aware of the regional automobile auctions in the area including AANE which advertised its services (as well as other businesses) through its monthly brochure sent to Massachusetts dealerships that were registered with AANE. **(Exhibit A)** Consequently, Union Auto Sales, Inc. registered the plaintiff with AANE as the dealership's registered buyer/agent. Over the course of approximately one year, plaintiff, acting in his capacity as a registered buyer for Union Auto Sales, Inc., purchased approximately 75 pre-owned automobiles at **many AANE auctions.** During his attendance at these auctions he would see numerous Massachusetts based dealers and buyers known to him from being in the automobile sales business for over seventeen years. **(Exhibit A)** In fact, many of the vehicles auctioned at the AANE facility were owned by large Massachusetts dealerships such as Jack Madden Ford located in Norwood, Massachusetts, Village Subaru of Acton, Massachusetts and even the AANE affiliated dealerships, such as Deluca Woodworth, Deluca Buick GMC and Deluca Chrysler Plymouth all located in Massachusetts. **(Exhibits A, F , page 6)**

The process leading up to the weekly auction purchases was routine. Union Auto Sales, Inc. would receive weekly "run lists" automatically, by mail and facsimile, and plaintiff and the dealership's owner would review the lists and select cars of interest. These "run lists" were then

7

updated on the day of the auction. Dealers were also invited to view the vehicles any time before the auction during operating hours. In addition to receiving AANE "run lists" plaintiff and Union Auto Sales, Inc. also received a monthly AANE brochure containing monthly market news, sales data from previous auctions and numerous promotional advertisements and solicitations regarding upcoming sales events or auctions. (Exhibits A,F,G) AANE would also contact the plaintiff directly by telephone regarding upcoming special leased vehicle auctions or fleet auctions from specific leasing companies. Lastly, AutoUse would contact plaintiff and Union Auto Sales, Inc. directly, by mail or facsimile, regarding special financing available "<u>only on automobiles purchased at the AANE auctions</u>." (Exhibit H) These particular solicitations from AutoUse also contained the AANE logo. These unsolicited brochures, "run lists" and AutoUse promotions were mailed or faxed automatically presumably pursuant to the "Marketing Consent Form" signed by the dealer.

On November 12, 2002 Union Auto Sales, Inc. received a direct solicitation from AutoUse offering "0% financing on all vehicles purchased at Auto Auction of New England from November 14 through Dec. 30, 2002 and floorplanned with AutoUse"( Exhibit H) A second similar solicitation was sent by facsimile on November 25, 2002. (Exhibit H, page 2) As a result of these specific solicitations and special finance offers along with a "run list" containing cars of interest to plaintiff, he attended the December 5, 2002 auction at AANE where he was ultimately struck and seriously injured by an AANE employee negligently operating a consigned vehicle. The vehicle that struck the plaintiff was a vehicle included on the "run list" sent to plaintiff and a car of interest to the plaintiff and the owner of Union Auto Sales, Inc.. In fact, plaintiff was inspecting the vehicle at the time of the accident.

## ARGUMENT

I. THIS U.S DISTRICT COURT HAS PERSONAL JURISDICTION OVER AUTO AUCTION OF NEW ENGLAND, INC. AND ITS EMPLOYEES BECAUSE IT IS "TRANSACTS BUSINESS" IN MASSACHUSETTS SATISFYING THE REQUIREMENTS OF THE MASSACHUSETTS "LONG-ARM" STATUTE - (M.G.L CHAPTER 223A, SECTION 3(a))

In diversity cases, "the district court's personal jurisdiction over a non-resident defendant is governed by the forum's long-arm statute." Rhodes v. Tallarico, 751 F. Supp. 277 citing Pizarro v. Hoteles Concorde International, C.A., 907 F.2d 1256 (1st Cir 1990). The inquiry involves two questions: "(1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under state law consistent with basic due process requirements mandated by the United States Constitution." Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 389 N.E. 2d 76, 79 (1979).

### A. Massachusetts "Long-Arm" Statute

The relevant provision of the Massachusetts long-arm statute in the case at bar is M.G.L Chapter 223A, Section 3(a) which provides that a Massachusetts court may exercise personal jurisdiction "**over a person, who acts directly or by agent**, as to a cause of action in law or equity arising from the person's...**transacting business** in this Commonwealth." In order for jurisdiction to exist pursuant to section 3(a), facts must satisfy two requirements: (1) the defendant must have transacted business in Massachusetts. and (2) the plaintiff's claim must have arisen from the defendant's transaction of such business. Tatro v. Manor Care, Inc. 416 Mass. 763, 625 N.E. 2d 549 (1994). The "transacting any business" clause in section 3(a) has been construed broadly by Massachusetts courts. See Tatro, 416 Mass. at 767. The Supreme Judicial Court has explained that although an isolated transaction with a Massachusetts resident may be insufficient, the **purposeful and successful solicitation of business** from residents of the Commonwealth, **by a defendant or its agent**, will suffice to satisfy this requirement. Id.

9

In *Tatro* the "transacting any business" clause of the Massachusetts long-arm statute gave the court personal jurisdiction over a California hotel where a plaintiff guest was injured on its property. The Supreme Judicial Court reasoned that the defendant , "by soliciting and obtaining meeting and convention business from at least ten Massachusetts businesses and maintaining telephone and mail contact with them, transacted business in the Commonwealth during the relevant period." In <u>Hahn v. Vermont Law School</u>, 698 F.2d 48, 50-52 (1st Cir.1983) "where there was evidence that the defendant made purposeful efforts to reach and serve the market for legal education in Massachusetts, the United States Court of Appeals for the First Circuit observed that the question of personal jurisdiction with respect to a transaction with a particular Massachusetts plaintiff should not turn on the intricacies of the law of contract formation, on the defendant's physical presence in Massachusetts <u>or on whether the Massachusetts plaintiff initiated contact</u> leading to the formation of the contract. The court concluded that the defendant's communications with the plaintiff in Massachusetts amounted to the transaction of business here, regardless of whether the contract between the parties had actually been concluded in the Commonwealth." <u>Tatro</u>, 625 N.E. 2d at 552 citing <u>Hahn v. Vermont Law School</u>, 698 F.2d 48, 50-52 (1st Cir. 1983). As was the case in <u>Tatro</u>, the contacts with the plaintiff, although not extensive, were not random or isolated events.

The Appeals Court of Massachusetts has also held that "the dissemination, on a persistent basis, of advertising, print and electronic, aimed at cultivating a market area in Massachusetts, without any other contact in Massachusetts constitutes "transacting business" for purposes of M.G.L. c. 223A, 3(a). <u>Gunner v. Elmwood Dodge, Inc.</u>, 24 Mass. App. Ct.96, 506 N.E. 2d 175 (1987), <u>Rhodes v. Tallarico</u>, 751 F. Supp. 278.

B.     <u>Solicitation of Plaintiff by AANE and its agent, AutoUse</u>

Plaintiff would assert that AANE, as the name implies, holds itself out as a New England regional auto auction facility available to any and all licensed dealers who register with it including any Massachusetts dealer. AANE and its affiliate, AutoUse, have, on a persistent basis, disseminated advertising to the plaintiff and presumably other registered Massachusetts dealers for the purpose of cultivating a market area.[5] In fact, defendant appears to admit sending promotional material to Massachusetts in its Affidavit. **(See Defendant's Memorandum - Exhibit A)** After registering with AANE, the plaintiff received multiple solicitations from AANE <u>over a one-year period</u> in the form of monthly "Market Reports" brochures, "run lists" and promotional material from AutoUse all with the purpose of enticing the plaintiff to purchase vehicles at AANE. **(Exhibits F, G, H)** As a result of these targeted solicitations, plaintiff purchased approximately 75 vehicles at the AANE facility on behalf of Union Auto Sales, Inc. and financed many of them through AutoUse. According to <u>Hahn v. Vermont Law School</u>, 698 F.2d 48, 50-52 (1st Cir. 1983) it is immaterial who initiated contact between the parties.

In addition to persistent solicitations by ANNE to plaintiff and other registered Massachusetts dealers, it has a business presence in Massachusetts by virtue of its affiliate, AutoUse, doing business and being located within its borders. AutoUse, as previously established, solicits business on behalf of AANE and can be considered AANE's agent for purposes of jurisdictional analysis. **(Exhibits E, H)** AANE also transacts business with

---

[5] Plaintiff asserts that many Massachusetts dealers are registered with AANE and are subjected to AANE solicitations based on his lengthy involvement in the automobile sales business in Massachusetts. He has been present at several auctions where many Massachusetts dealers known to him were present as buyers.(Exhibit A) In addition, plaintiff asserts that on many occasions he has attended special sales events involving large Massachusetts dealers. However, without discovery, plaintiff is unable at this time to identify the exact number of Massachusetts dealers AANE solicits or the percentage of business attributable to Massachusetts dealers.

11

numerous affiliated Massachusetts automobile dealerships (Deluca Woodworth, Deluca Buick GMC and Deluca Chrysler Plymouth) that are owned by the same individuals who own and operate AANE and AutoUse. **(Exhibit A)**

The Massachusetts long-arm statute explicitly asserts jurisdiction based equally on the acts of a party or his agent. Mass. Gen. Laws c. 223A, § 3. Similarly, for due process purposes, `the contacts of a corporation's agent can subject the corporation to personal jurisdiction.' ... Other jurisdictions have described an agent, in the jurisdictional context, as one who acts on behalf of and with the authorization of another. If the agent's acts in the forum justify the exercise of jurisdiction over it, then jurisdiction may also be exercised over the principal. ... Other states reach the same result on agency principles without consideration of whether one's proxy is properly designated an 'agent'. ... Control over the agent by the principal is also a factor. ... *O'Keefe, et al v. Amin, et al*, 1996 WL 463685 (D.Mass)

AutoUse is AANE's Massachusetts based agent as it actively solicits business in Massachusetts on behalf of AANE and, in fact, solicited plaintiff up to the date of his automobile accident on AANE's premises. **(Exhibit H)** Furthermore, AANE and AutoUse share common officers and directors supporting a conclusion that the AANE principals control AutoUse. In the matter of *Johansen, et al v. Budget Rent a Car Systems, Inc., et al*, 3 Mass. L. Rptr. 589 (Mass. Super. 1995) the court concluded that jurisdiction over a subsidiary is sufficient to confer jurisdiction over codefendant parent and sister companies with boards of directors and corporate officers identical to those of the defendant. In the present case, AutoUse not only shares similar officers and directors with AANE, but is located in Massachusetts and engages in active solicitation of business in Massachusetts on behalf of AANE as its agent.

C.  **AANE's Internet Web Site**

Although AANE's web site is, presumably, published from its office in Londonderry, New Hampshire, it is available nation-wide and has undoubtedly been accessed by Massachusetts dealers since the monthly AANE "Market Reports" brochure it mails specifically directs dealers to the company web site.6 **(Exhibit F )**. Dealers can access this site and login to a "Dealers Only" section, with a specific dealer identification number, to obtain specific dealer information. In addition, dealers can print registration forms, read AANE advertisements and obtain calendar information regarding upcoming auctions and special events. These special events, at times, have included Massachusetts based clients such as Jack Madden Ford and Village Subaru **(Exhibit B, page 3)** By its nature, the web site is a promotional site containing mostly advertisements and AANE information.

In the case of <u>Hasbro, Inc. v Clue Computing, Inc.,</u> 994 F. Supp. 34 (D. Mass.) (1997) the court found jurisdiction based on the defendant's web site. It found that due to the fact that the defendant maintained a web site that listed a Massachusetts based company that it derived significant revenue from, along with other Massachusetts contacts, the court maintained jurisdiction. According to the court in <u>Hasbro</u>, along with other cases where the content of the web site itself was the basis of the cause of action, jurisdiction may exist even without other "contacts." It is apparent that the mere fact that a company has a web site does not, by itself, generally subject that party to jurisdiction. On the other hand, courts seem to consider a web site that is interactive and solicits business as one "contact" that can help establish personal jurisdiction. *See <u>Digital Equipment Corp. v. Alta Vista Technology, Inc.</u> 960 F.Supp. 456 (D. Mass. 1997).* (in conjunction with other contacts, an interactive web site put the defendant "over the line" making jurisdiction appropriate).

In the present case, the plaintiff argues that AANE's web site, although not specifically targeting Massachusetts dealers, it is primarily a promotional site that can be accessed by any Massachusetts dealer doing business with AANE. As previously stated, AANE's brochure, which is apparently mailed to Massachusetts dealers registered to transact business with it, invites them to view its web site ultimately exposing them to on-line AANE promotional material. In this context, plaintiff would argue, the AANE web site targets only those dealers who are registered with it including, but not limited to, Massachusetts dealers. Lastly, AANE's Massachusetts based affiliated agent, AutoUse, is also included on the web site promoting special financing arrangements to dealers who download forms seeking to register with AANE. (Exhibit B, page 5)

### D. Conclusion

Plaintiff argues that due to the ongoing and persistent solicitations from AANE and it's affiliate/agent, AutoUse inside Massachusetts, the location of AutoUse inside Massachusetts, the extent and manner in which the plaintiff was solicited and AANE's Massachusetts based clientele, it is apparent that AANE is "transacting business" in Massachusetts. In addition, plaintiff argues that as a result the specific solicitations sent to him from AANE and it's agent, AutoUse, he attended the December 5, 2002 auction when he was seriously injured by an AANE employee, Defendant Kenneth Lord. As such, plaintiff asserts that his injuries are a direct result and "arise from" specific solicitations of plaintiff's business in Massachusetts.

Due to the foregoing reasons, plaintiff suggests that he has proffered sufficient evidence to meet his burden of proof and has satisfied the requirements of the Massachusetts "long-arm" statute.

---

[6] www.aane.com

II. **THE COURT'S EXERCISE OF PERSONAL JURISDICTION OVER DEFENDANTS AUTO AUCTION OF NEW ENGLAND, INC. AND KENNETH LORD IS CONSTITUTIONALLY PERMISSIBLE**

The Fourteenth Amendment requires that the defendant have either "continuous and systematic activity, unrelated to the suit, in the forum state *Foster –Miller, Inc.* 446 F.3d at 144, or certain "minimum contacts with the state so that the exercise of jurisdiction" does not offend traditional notions of fair play and substantial justice." *Hasbro, Inc. v Clue Computing, Inc.,* 994 F. Supp. 34 (D Mass.) (1997) quoting *International Shoe v. Washington,* 326 U.S. 310, 316 (1945).The former confers general jurisdiction; the latter, specific jurisdiction. *Hasbro, Inc.* at 36. "Minimum contacts" must have a basis in some act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewisc,* 471 U.S. 462, 472-73 Although plaintiff suggests that this court has "general" jurisdiction over AANE due to its continuous and systematic activity in the state, plaintiff argues that AANE has sufficient "minimum contacts" with Massachusetts to satisfy "traditional notions of fair play and substantial justice."

The 'minimum contacts" focus involves weighing the legal sufficiency of a specific set of interactions *Helicopteros Nacionales de Colombia, S.A v. Hall,* 466 U.S. 408 (1984) . The court is compelled to examine three distinct components-relatedness, purposeful availment and reasonableness. *Hasbro, Inc.* at 36 citing *Burger King Corp. v. Rudzewisc,* 471 U.S. 462, 472-73. First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's instate contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws. Third, the exercise of jurisdiction must be reasonable.

15

A.   **Relatedness and Purposeful Availment**

Plaintiff's negligence claims raised in this action relate directly from the defendant's contact with Massachusetts as well as with the plaintiff himself. As stated in plaintiff's affidavit **(Exhibit A),** it was the specific advertisements sent to him from AANE and its Massachusetts based agent, AutoUse, that caused him to attend the specific auction on December 5, 2002 that ultimately lead to his bodily injury claim. In addition, plaintiff was continuously solicited over a one-year period and attended many auctions where he purchased a total of approximately 75 cars from the defendant. This was not "one-time" isolated contact with the plaintiff but, instead, was a prolonged business arrangement where AANE and AutoUse continuously solicited the plaintiff (and, presumably, other Massachusetts registered dealers) on a weekly basis to travel to the AANE facility in an effort to sell automobiles at its weekly auctions just ten miles past the state border. In light of this arrangement, it is reasonable to conclude that the plaintiff's claims against AANE arose out of its Massachusetts activities and that AANE purposefully availed itself of the privilege of conducting business activities in Massachusetts while invoking the protections and benefits of its laws.

B.   **Reasonableness**

Under the circumstances, it would not be unreasonable to require AANE, which apparently draws its customers from Massachusetts as well as other states, to defend this action in Massachusetts. As stated, the defendant is located approximately ten miles north of the Massachusetts border. It has Massachusetts based affiliated companies which it apparently conducts business with. It would not be a burden on it or its Massachusetts based counsel to defend this matter in this court.

Massachusetts also has an interest in resolving disputes between its residents and injuries caused by non-resident defendants who transact business in the state. The United State

16

Supreme Court has recognized that a "state generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." _Burger King Corp. v. Rudzewisc_, 471 U.S. 462, 472-73 citing _McGee v. International Life Ins. Co._, 355 U.S. 220,223, 78 S. Ct. 199 (1957). Here the defendant actively solicits business in Massachusetts and derives an economic benefit by doing so. It avails itself of the benefits of doing business in Massachusetts and invokes the protections of its laws, thereby making the defendant's involuntary presence before the state's courts foreseeable. Under these circumstances it would be fair and reasonable for this court to assert jurisdiction over this matter.

For the foregoing reasons, plaintiff asserts that this court's exercise of personal jurisdiction over the defendants satisfies Constitutional Due Process.

### III.    CONCLUSION

Plaintiff asserts that he has proffered sufficient evidence to meet his burden of proof and has satisfied the requirements of the Massachusetts "long-arm" statute and Constitutional Due Process. As such, plaintiff requests that the Defendants Auto Auction of New England, Inc. and Kenneth Lord's Motion to Dismiss be denied.

Respectfully Submitted,
Leon Boole Jr.
By His Attorney,

Philip J. Doherty (BBO # 554591)
73A Winthrop Ave.
Lawrence, Ma. 01843
(978) 687-7700

## CERTIFICATE OF SERVICE

I, Philip J. Doherty, hereby certify that I have served the foregoing **Memorandum in Support of Plaintiff's Opposition to Defendants Auto Auction of New England, Inc. and Kenneth Lord's Motion to Dismiss** to counsel of record by mailing the same, postage prepaid to:

Rafael P. McLaughlin, Esq.
Morrison Mahoney, LLP
250 Summer Street
Boston, Ma. 02210

Date: 5-12-05

_____
Philip J. Doherty
73A Winthrop Ave.
Lawrence, Ma. 01843
(978) 687-7700